## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALLAN PETERSEN,**

      **Plaintiff,**

**v.**                                                  **Civil action no. 5:07cv53**
                                                        **(Judge Stamp)**

**R. TRYBUS,**
**No. JUNKINS,**
**ERIC ELZA,**
**MALLORY, Unicor Supervisor,**
**KOVCEK,**
**VERONIC FERNANDEZ,**
**M. EDDY, Correctional Officer,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On April 25, 2007, the *pro se* plaintiff, an inmate at FCI-Morgantown,[1] initiated this case by filing a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The plaintiff was granted permission to proceed as a pauper on May 11, 2007. On November 15, 2007, the plaintiff was granted permission to amend his complaint, and on December 6, 2007, the plaintiff filed an amended complaint. On July 16, 2008, after an initial screening, the undersigned found that summary dismissal was not appropriate at that time. Therefore, the Clerk was directed to issue a sixty (60) day summons for each defendant.

On October 16, 2008, the defendants filed a Motion to Dismiss or, in the alternative, for

---

[1]The plaintiff has since been transferred to FPC Montgomery which is located in Alabama. However, because the plaintiff's complains of events that occurred at FCI Morgantown, this Court remains the proper venue for reviewing his case.

Summary Judgment. On October 17, 2008, the plaintiff was issued a Roseboro Notice. On November 6, 2008, the plaintiff filed a Response in Opposition to the defendant's Motion to Dismiss.

## II. Issues Presented

### A. The Complaint

In his complaint, the plaintiff alleges that the defendants violated his First Amendment rights on August 1, 2006 with respect to "his access to the court, then retaliated against him by placing him in the [Special Housing Unit] SHU after Plaintiff file a complaint in that U.S. Court for the District of Northern, West Virginia." (Doc. 1, p. 2 ). The plaintiff believes that this conduct occurred because on the previous day, July 31, 2006, he received an administrative remedy appeal response which reversed a disciplinary decision related to the plaintiff and that "it appeared the reversal decision made the staff angry." (Doc. 1, p. 4).

The plaintiff specifically alleges that defendant, Elza, "informed defendants, R. Trybus and Kov[s]cek, to order the Defendants Mallory and N. Junkins to remove all of Plaintiff's legal property from his locker, place him on a large sheet, inventory nothing, placed them on a Gator, and take them to the administration building inside the SIS Office, which is outside of the rules of the prison regulation."(Doc. 1-1, p. 3). The plaintiff further alleges that, after defendant Trybus took "what he wanted from [plaintiff's] legal property...I hiked with my two large bags of legal property on my back, straight back to [my housing] unit, where I reside." (Doc. 1-1, p. 5 ). The plaintiff then alleges that "the memorandum, which [he] prepared recently in support of a writ of certiorai, which [he] intended to file together in Court, was missing from [his] documents." (Doc. 1-1, p. 5 ).

Additionally, the plaintiff alleges that another case that he had filed with this Court, Civil Action Number 3:06cv72, was dismissed in April 2007, and that he appealed. (Doc. 1-1, p. 6). However, he claims that the Court needed an *in forma pauperis* form from him, but, before he could

prepare it, defendant Trybus was responsible for officers detaining him in the Special Housing Unit ("SHU") pending investigation. The plaintiff alleges that his placement in the SHU was "retaliation and harassment." (Doc. 1-1, p. 8)).

In his amended complaint, the plaintiff adds Fernandez and Eddy as defendants. He alleges that their involvement included retaliation, discrimination, and harassment with respect to his placement in the SHU on April 17, 2007. (Doc.12).

As relief, the plaintiff seeks injunctive relief in the form of a transfer back to the general population. In addition, he seeks declaratory relief and damages in the amount of $4 million dollars.

## II. The Defendant's Answer

For their answer, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. In support thereof, the defendants contend that the plaintiff's claim of retaliation regarding his placement in the SHU should be dismissed for failure to exhaust his administrative remedies. Moreover, the defendants allege that even if the plaintiff had exhausted his administrative remedies regarding his placement in the SHU, he fails to state a claim for relief. The defendants also argue that the plaintiff's request for injunctive relief should be dismissed as moot since he has already obtained the relief he seeks: return to the general population. Finally, the defendants contend that Court should dismiss the plaintiff's claim regarding access to the courts because he has not met the standards for maintaining such a claim.

## III. Plaintiff's Opposition to the Defendant's Answer

In his reply to the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment, the plaintiff makes no substantive arguments. Instead, he simply responds that the Bureau of Prisons and the Department of Justice did not request or determine the "Government Attorney should represent the defendants in this action." Accordingly, the plaintiff argues that the consolidated response

3

should be void. The plaintiff also alleges that he never received the Response of the Government or Motion to Dismiss on behalf of the defendants although he acknowledges receipt of the Roseboro Notice.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.

4

Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Plaintiff's Retaliation Claim Regarding Placement in the SHU**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S.

5

516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In this case, the plaintiff has failed to exhaust his complaint regarding retaliation. Furthermore, the plaintiff did not begin the administrative process until **after** he filed his complaint with this court. As previously noted, the plaintiff initiated his complaint on April 25, 2007. He subsequently initiated an administrative remedy on May 8, 2007, complaining that he was improperly placed in the SHU on April 17, 2007, for allegedly signing another inmate's request for administrative remedy. The plaintiff's remedy was denied at the institutional level on May 31, 2007. He appealed to the Mid-

---

[2] Id.

Atlantic Regional Office on June 14, 2007, and it was rejected on the same date because he did not include all four copies of the appeal as required by policy. He was informed that he could resubmit in proper form within ten days, Although his appeal should have been rejected for the additional reason that he had filed at the wrong regional office in light of his transfer, he was given the opportunity to resubmit. He resubmitted to the Mid-Atlantic Regional Office on July 6, 2007, and it was again rejected, this time for being filed in the wrong region. He resubmitted to the Southeast Regional Office on August 6, 2007. On August 15, 2007, the office rejected it because he did not include enough copies of his continuation pages. He was told he could resubmit within ten 10 days. He resubmitted on September 20, 2007, and on October 4, 2007, the submission was rejected as untimely. On November 1, 2007, he appealed to the Central Office, and on November 4, 2007, it was rejected, upholding the Southeast Regional Office's rejection as untimely. (Doc. 48-2, pp.3-4). Accordingly, the plaintiff's allegations regarding his placement in the SHU should be dismissed for failure to properly exhaust his administrative remedies.

**B. Access to the Court**

"The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries, or adequate assistance from prisoners trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). When alleging denial of access to the courts, a prisoner must make specific allegations and must also identify an actual injury resulting from official conduct. Cochran v. Morris, 72 F.3e 1310 (4th Cir. 1996). "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." Id. at 1317. Actual injury sufficient to sustain a cause of action foe denial of access to the courts is present where, for example, an inmate deprived of legal materials is unable to meet court imposed deadlines as a result of the deprivation. Roman v. Jeffes, 904 F.2d 192, 198 (3d Cir. 1990).

7

However, "the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In Wolff v. McDonnell, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to 'civil rights actions' --i.e., actions under § 42 U.S.C. 1983 to vindicate 'basic constitutional rights.'" Lewis v. Casey, 518 U.S. 343, 354 (1996)(citations omitted).

In his complaint, the plaintiff alleges that as the result of the incident on August 1, 2006, when all of his legal property was removed from his locker, the memorandum he had prepared and which he intended to submit in support of a writ of certiorari was missing. The plaintiff further alleges that the deadline for submitting the memorandum was September 2006. However, the plaintiff makes no allegation that he missed a deadline as a result of the alleged confiscation of the memorandum. Furthermore, during the period August 1, 2006 through the end of September 2006, the plaintiff was housed in Housing Unit C (Byrd Unit) and was not in the SHU. (Doc. 48-20, p.2). Therefore, he was in general population during the time preceding the date he claims his memorandum was due and had full access to the library. Finally, it would appear that the only petition for writ of certiorai that he filed with the Supreme Court was Peterson v. U.S., 543 U.S. 1075 (2005), and cert was denied in that case on January 10, 2005, some nineteen months before the alleged incident at FCI Morgantown.

The plaintiff also makes reference to filing an appeal in case #3:06cv72, another Bivens action he filed with this court on July 17, 2006. The plaintiff states that the Court indicated that it needed an in forma pauperis form to continue with the appeal. The plaintiff further states that on April 17, 2007, before he could prepare the form, he was placed in the SHU. To the extent that the

plaintiff is alleging that his placement in the SHU violated his right to access to the Court, the same simply is not true. On May 8, 2007, the Fourth Circuit Court of Appeals granted the plaintiff leave to proceed on appeal without full prepayment of fees on the terms imposed by the Prison Litigation Reform Act. (See 3:06cv72, Doc. 71).

In summary, the plaintiff has made a conclusory allegation that the defendants "together, in agreement knowingly and intentionally violated Plaintiff access to the Court." (Doc. 101, p. 2). The plaintiff has presented no evidence that he suffered any legal injury as the result of the actions taken by the defendants on August 1, 2006. Accordingly, this allegation is due to be dismissed.

**C. Motion for Injunctive Relief**

The standard for preliminary injunctions in the Fourth Circuit is established by Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). Four factors must be considered:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted).

If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In his complaint, the plaintiff requests that the Court enter an order directing that he be removed back to the general population from the SHU. On May 1, 2007, FCI Morgantown staff determined there was insufficient evidence to charge with a rules infraction and, therefore, he was released from the SHU. (Doc. 48-10, p.4). Subsequently, the plaintiff was transferred to FPC Montgomery. (Doc. 8). Therefore, the plaintiff is no longer subjected to the alleged improper placement in the SHU. Accordingly, the Court need not address the standard for granting injunctive relief, and the plaintiff's request for the same should be denied as moot.[3]

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Motion to

---

[3]Article III of the constitution requires that federal courts adjudicate only cases and controversies where the controversy is live and ongoing. Lewis v. Continental Bank Corp, 494 U.S. 472, 477-78 (1990). In prison litigation cases, the Fourth Circuit has consistently held that, when a prisoner is no longer subject to the alleged unconstitutional conditions, his claim is moot. See, e.g., Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)(prisoner's transfer rendered moot his claims for injunctive and declaratory relief); Magee v. Waters, 810 F.2d 451, 542 (4th Cir. 1987)(holding that transfer of a prisoner rendered moot his claim for injunctive relief); and Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)(holding transfer made moot claim for injunctive relief).

Dismiss (Doc. 47) be GRANTED and the plaintiff's Bivens complaint be **DISMISSED WITH PREJUDICE** as it relates to his claim for injunctive relief and to denial of access to the Courts and be **DISMISSED WITHOUT PREJUDICE** as it relates to his claim of retaliation.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: December 16, 2008

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE